IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MAYER BOTZ
ENTERPRISES LLC,

    Plaintiff,

v.

                              Case No. 1:21-cv-00992-MLG-LF

CENTRAL MUTUAL
INSURANCE COMPANY,

    Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The summary judgment standard is one of the foundational legal concepts in civil litigation. As explained in Federal Rule of Civil Procedure 56, and legions of decisional authority addressing that rule, a party is entitled to summary judgment if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The primary purpose of a summary judgment action is to determine whether factual questions exist such that a trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). In making that assessment, the non-moving party is given the benefit of the doubt, and all reasonable inferences inure to their benefit. *EFLO Energy v. Devon Energy Corp.*, 66 F.4th 775, 787 (10th Cir. 2023). However, summary judgment may not be avoided by mere disagreement with factual contentions that are supported with competent evidence.

> [A] party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute.

*Congress v. Gruenberg*, 643 F. Supp. 3d 203, 215 (D.D.C. 2022). And where "a party fails to

1

properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

These well-worn axioms are not simply words to be included reflexively as part of the "legal standard" section of a brief. The words mean what they say, and it is incumbent on a party challenging a party's request for summary judgment to proffer *some* evidence—deposition testimony, documents, or otherwise—that creates a triable question. Because the Court finds that Plaintiff Mayer Botz Enterprises LLC ("Mayer Botz") has not cleared this hurdle, as explained in detail below, the Court grants Defendant Central Mutual Insurance Company's ("Central Mutual") motion for summary judgment. Doc. 51.

## I.     Factual and Procedural Background

Mayer Botz owns a building located at 7910 Loraine Court NE in Albuquerque, New Mexico (the "Property"). Doc. 51 at 4 ¶ 1. Central Mutual insured that Property. *Id.* The policy provided certain coverages for wind and hail damage to the Property for the period from August 1, 2019, through August 1, 2020. *Id.* Mayer Botz seeks policy benefits it asserts are owed because of a damaging hailstorm that struck the area where the Property is located. The details of the storm, damage, insurance claim, and denial are as follows.

Mayer Botz asserts that, on August 27, 2019, a hailstorm struck the area where the Property is located. *Id.* ¶ 3. It claims the storm damaged the "roofs, doors, vents, stucco, plumbing, HVAC units, and other roof appurtenances." *Id.* at 4-5 ¶ 3. Although slow to move on the matter, Mayer Botz's public adjuster, Maria Lamego, eventually submitted a claim for damages with Central

Mutual.[1] *Id.* at 4 ¶ 2. In support, she included (1) her estimate for repairs to the roof with attached photographs, totaling $260,417.77; (2) "a bid for replacement of the HVAC units allegedly damaged and unable to be repaired; (3) a StormIntel Hail Report; and, (4) a Benchmark Hail Report." *Id.* at 5 ¶ 4 (footnotes omitted). Central Mutual acknowledged receipt of the claim and commenced its investigation. *Id.* at 6 ¶ 7.[2]

A few months thereafter, Central Mutual sent a denial letter to Mayer Botz explaining that it found no damaging hail events occurring during the policy period and disclaimed coverage. *Id.* at 11 ¶ 27. That correspondence memorialized Central Mutual's conclusion that any hail damage most likely occurred on or about July 30, 2018—prior to the policy period. *Id.* Unsatisfied with this result, Mayer Botz filed suit alleging breach of contract, breach of the duty of good faith and fair dealing (bad faith), and violations of the New Mexico Unfair Insurance Practices Act (UIPA) and Unfair Practices Act (UPA) and seeking to recover inter alia punitive damages.[3] Doc. 1-1 at 4-8. After discovery concluded, and the deadline for expert disclosures having passed, Central Mutual moved for summary judgment. Doc. 51. The Court held a hearing on February 14, 2024, to hear the parties' arguments. Doc. 73.

**II.    Central Mutual is Entitled to Judgment on Mayer Botz's Breach of Contract Claim**

Central Mutual moves for summary judgment on Mayer Botz's breach of contract claim.

---

[1] The claim was filed twenty months after the date of the pertinent storm, on May 3, 2021. *Id.* at 4 ¶ 2.

[2] It assigned Randy Morgan of Team One Adjusting Services, LLC, an independent adjuster, to assist with its adjustment of the claim, and Scott Morrison, an engineer with Haag Engineering, to inspect the Property. *Id.* On May 27, 2021, an adjustor from Team One inspected the property. *Id.* at 9 ¶ 19. Mayer Botz's representative indicated areas of the stucco and roof allegedly damaged and advised of interior leaks but Team One was unable to determine if these identified issues occurred during the policy period. *Id.*

[3] Central Mutual removed the case to federal court. Doc. 1.

It argues that Mayer Botz has not identified an event occurring during the policy period—i.e., August 1, 2019, through August 1, 2020—that could have caused damage to the Property. Doc. 51 at 14. It supports that argument with competent evidence showing that at least three qualified roof inspectors—Roderick Rennison, Stephen Patterson, and Scott Morrison—opined that any hail that fell during the policy period was not large enough to cause damage to either the modified bitumen roof or the metal roof.[4] *Id.* at 16-17. And two of these inspectors noted deterioration of the roof from wear and tear. *See* Doc. 51-14 at 2 ("There was age-related deterioration of the roof coverings[.]"); Doc. 51-16 at 5 ("The modified bitumen roofs are showing signs of normal aging, normal wear-and-tear . . . .").

Mayer Botz's rebuttal evidence is scant and limited to the following contentions: (1) claimed contradictions in various reports provided by Rennison and Morrison; (2) Lamego's observations and assessment of the August 27, 2019, hailstorm; (3) a claim file note Mayer Botz construes as evincing dishonest intent; and (4) the personal recollections of Zach Crow, who was the Property's facility manager, regarding the Property's roof damage. Doc. 58 at 11-12; Doc. 51-6 at 2.

Taking these matters in turn, the Court begins with Mayer Botz's averment that there are contradictions in the roofing inspector reports. Mayer Botz asserts that Rennison concluded that there was no hail damage to the roof whereas Morrison found "64 hail-damaged spots on the roof." Doc. 58 at 11. But Mayer Botz's characterization of this evidence is not exactly correct. Morrison's report differentiated between damage to the "field" of the modified bitumen roofing and the

---

[4] All three inspectors agree that the threshold size of hail to cause damage to modified bitumen roofing is between 1.5 inches and two inches. *See* Doc. 51-14 at 4 (Rennison's report); Doc. 51-12 at 4 (Morrison's report); Doc. 51-16 at 12 (Patterson's report). For metal roofing, the threshold is higher—at 2.5 inches and larger. *See* Doc. 51-12 at 4; Doc. 51-16 at 12.

4

smaller, "slight dents" that were found in the *base flashing* of that section of roofing. He found no damage to the former.[5] And he found 64 slight dents to the base flashing, which he attributed to "hailstone impacts" most likely occurring on July 30, 2018—which is outside of the policy period. Doc. 51-12 at 5. Simply put, neither Rennison nor Morrison find any reason to suggest that a hailstorm caused damage to the Property within the policy period, and Mayer Botz offers no evidence to controvert that fact.

Mayer Botz's take on Lamego's statements is similarly flawed. In her deposition, Lamego testified that, on August 27, 2019, hail occurring *at the Property* measured less than .75 inches.[6] Doc. 58-1 at 4, 65:16-22. She specified further that, within one mile of the property, hail occurred measuring one inch and, within five miles, it measured 1.25 inches. *Id.* The hail history reports on which she relied confirm these figures. *See* Doc. 51-2 at 4-5. But significantly, Lamego never testified that hail measuring 1.25 inches occurred *at the Property* on August 27, 2019, as Mayer Botz suggests. And, even if she had, that size of hail would have been too small to cause actual damage to either the modified bitumen roofing or the metal roofing.[7] *See* Doc. 51-14 at 4; Doc. 51-12 at 4; Doc. 51-16 at 12.

Mayer Botz next claims that a claim file note written by Central Mutual adjuster (and

---

[5] Mayer Botz also asserts that, because Rennison stated that "hail damage should not be visible past a 12 month period," the damage that Morrison found can more likely be attributed to the 2019 hailstorm. This also misstates the evidence. First, Rennison stated that "*hail spatter* marks generally only remain visible for a period of about 12 months." Doc. 51-14 at 3 (emphasis added). Second, and as stated *supra*, Morrison *did not* find damage to the modified bitumen roofing. He only found damage to the *base flashing* in 64 places that was most likely attributable to a hail event on July 30, 2018.

[6] All measurements refer to the diameter of the hail.

[7] As explained above, the uncontroverted evidence is that hail must be greater than 1.5 inches in diameter to cause damage to modified bitumen roofing. Doc. 51 at 9 ¶ 21; Doc. 58 at 5 ¶ 21 (not specifically controverting that fact).

defendant) Eric Trainer is "evidence that Defendant and its agents were tailoring" evidence to support a coverage denial. Doc. 58 at 12. The claim file note reads in its entirety:

> I RECEIVED A STATUS REPORT FROM IA ASKING ME TO CONTACT THE FIELD ADJUSTER (FA). I CALLED AND TALKED TO MR. RANDY MORGAN. HE SAID THAT HIS SUPERVISOR WANTED HIM TO COMPLETE A REPORT, BUT HE SAID THAT HE DID NOT WANT TO JEOPARDIZE DOCUMENTING HIS PHOTOS AND INSPECTION UNTIL HE HAS REVIEWED THE ENGINEER REPORT. I LET HIM KNOW THAT I AGREED.

Doc. 58-6. Trainer's intent in drafting this note is unintelligible, and apparently neither he nor Morgan were ever deposed. Without any additional information, Mayer Botz's request that this Court construe these three sentences as evidence of nefarious intent asks too much. Even when viewed most favorably to Mayer Botz, no rational trier of fact could reasonably find that Central Mutual breached its contractual agreement based solely on this statement.

Finally, the Court addresses Crow's personal recollections about the pertinent hailstorm and associated damage. Mayer Botz accurately states that Crow was present at the Property on August 27, 2019, and that, because he was "up on the roof quite a bit," he noticed divots, dings and pits that he had not noticed before that date. Doc. 58-2 at 4, 39:5-40:10. This testimony is, however, is not conclusive, and it is contradicted by Crow's other admissions. First, Crow admitted that he had no reason to dispute Morrison's conclusion that July 30, 2018, was the most likely date of hailfall. Doc. 51-10 at 3, 86:17-87:7. He also conceded that he did not take any pictures of the roof that day, does not have any training in determining the size of hail that can cause damage to a roof, and does not know how big the hail was that fell on August 27, 2019. Doc. 58-2 at 4, 48:10-17. Crow further conceded he is "not an expert," *id.* at 41:1-2, and cannot challenge any claims about when the relevant hail damage occurred. Thus, Crow's testimony does not rebut the undisputed evidence that hail occurring at the Property on August 27, 2019, measured .75 inches

in diameter and was not large enough to cause damage to the roof.

In sum, the undisputed evidence shows that the inspectors found wear, tear, or deterioration at the Property and that there was no damage to the roof resulting from an event occurring within the policy period. Accordingly, there is no coverage under the policy for the claimed loss and thus no concomitant contractual obligation for Central Mutual to indemnify Mayer Botz. On this basis, it cannot be said that Central Mutual breached the contract and, in turn, a fair-minded jury could not return a verdict for Mayer Botz. Summary judgment is therefore warranted.

**III.     Extra-Contractual Claims**

Where there is no duty to defend and no right to indemnification under an insurance policy, courts have dismissed claims for bad faith and violations of the UIPA. *See, e.g.*, *OR&L Constr., L.P. v. Mountain States Mut. Cas. Co.*, 2022-NMCA-035, ¶ 38, 514 P.3d 40, 51 (affirming dismissal of plaintiff's bad faith and UIPA claims where it failed to establish coverage under defendant's insurance policy). The Court has concluded that there is no duty to defend and no right to indemnification under the policy. Under the facts presented, summary judgment on the claims for bad faith and violations of the UIPA is warranted.

As for claims alleging violation of the UPA, summary judgment is also justified. The UPA prohibits "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce." NMSA 1978, § 57-12-3 (1953). Such practices include (1) the use of "exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive," § 57-12-2(D)(14); (2) the failure "to deliver the quality or quantity of goods or services contracted for," § 57-12-2(D)(17); and (3) the engagement in unconscionable trade practices which in turn includes the taking advantage of "the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree" or acts resulting "in a gross disparity

between the value received by a person and the price paid." *See* § 57-12-2(E).

Central Mutual seeks summary judgment on this claim because Mayer Botz has pointed to no evidence of violations under the UPA. Doc. 51 at 20. Mayer Botz contends that Central Mutual violated the UPA because it "chose to insure the [Property] without conducting an inspection, making a report, or recommending any changes"; its field adjuster "refused to create a report regarding the storm at issue until he had read an expert report for fear of 'jeopardizing' the claim"; and its experts came to conflicting conclusions. Doc. 58 at 13. But these facts are either unsupported by the evidentiary record, ambiguous or immaterial.

First, Mayer Botz claims without any evidentiary support that Central Mutual insured the property without conducting an inspection, making a report, or recommending any changes. This contention fails to satisfy its burden on summary judgment, which entails "go[ing] beyond the pleadings and set[ting] forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Second, Mayer Botz claims that the field adjuster's refusal to create a report is evidence of Central Mutual's "tailoring its evidence to suit a predetermined outcome." Doc. 58 at 3. The Court is unpersuaded that this evidence demonstrates a UPA violation: as addressed above, it is vague at best and no rational trier of fact could reasonably find that Central Mutual violated the UPA based on that evidence. Finally, as to the expert's purportedly conflicting conclusions, that evidence does not substantiate the UPA claims. It does not ineluctably follow that, assuming its experts came to conflicting conclusions, Central Mutual used exaggeration, innuendo or ambiguity as to a material fact, failed to deliver the quality or quantity of goods or services contracted for, or engaged in unconscionable trade practices. Its experts' conclusions are immaterial to this claim. For these reasons, Central Mutual is entitled to

summary judgment on the extra-contractual claims.

## IV.     Punitive Damages

 "A punitive damage claim is not an independent cause of action or issue separate from the balance of a plaintiff's case," *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1554 (10th Cir. 1991), and a party seeking damages "must establish a cause of action before punitive damages can be awarded." *Sanchez v. Clayton*, 1994-NMSC-064, ¶ 13, 117 N.M. 761, 767. For these reasons, it is incorporated as part of judgment in this matter.

## Conclusion

For the foregoing reasons, the Court grants Central Mutual's motion. Doc. 51. It is hereby ordered that summary judgment is entered in favor of Central Mutual. Mayer Botz's claims are hereby dismissed with prejudice. The Court shall issue a Rule 58 judgment separately. It is so ordered.

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA